UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| CAMERON SCHWETTMAN, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:15CV216 RLW |
| | ) |
| NANCY BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of Defendant's final decision denying Plaintiff's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth below, the Court affirms the decision of the Commissioner.

### **I. Procedural History**

On December 4, 2012, Plaintiff protectively filed an application for DIB. (Tr. 16, 168-74) He filed an application for SSI on December 13, 2012. (Tr. 16, 175-80) In both applications he alleged disability beginning November 21, 2012. (Tr. 16, 168, 175) Plaintiff alleged that he became unable to work due to migraine headaches, anxiety, panic attacks, and bipolar disorder. (Tr. 63, 85) The applications were denied, and Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 63-82, 86-89, 92-93) On March 12,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further actions needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2014, Plaintiff testified at a hearing before the ALJ. (Tr. 32-60) On April 1, 2014, the ALJ determined that Plaintiff had not been under a disability from November 21, 2012 through the date of the decision. (Tr. 16-27) Plaintiff then filed a request for review, and on September 24, 2015, the Appeals Council denied Plaintiff's request. (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the March 12, 2014 hearing, Plaintiff was represented by counsel. Plaintiff's attorney delivered an opening statement, asserting that Plaintiff's mental impairments met the Listing requirements at Step 3. Counsel stated that despite treatment, Plaintiff's impairments continued to persist and worsen. (Tr. 34-36)

Upon questioning by the ALJ, Plaintiff testified that he was born in 1965, was divorced, and lived in a trailer with his two daughters, ages 23 and 17, who moved between Plaintiff and their mother. Plaintiff graduated from high school, and he took some college courses and received vocational training in landscape horticulture. Plaintiff received food stamps and had no medical coverage. He last worked for Berry's Lawn Service in 2012, mowing and trimming lawns. Plaintiff had also worked for Workforce as a contractor performing numerous jobs at Proctor & Gamble and for Manpower as a lab supervisor, also at Proctor & Gamble. (Tr. 37-40)

Plaintiff's disabilities included migraines, anxiety, panic disorder, and bipolar disorder. He also had asthma and problems in his neck. Plaintiff took medication for asthma, OCD, anxiety, and bipolar disorder. Plaintiff previously received disability for migraines but was able to return to work. However, he testified that he continued to have migraines every day, which caused loss of vision and numbness in his arms, hands, tongue, and nose. Plaintiff had asthma problems every morning, and he had a bulging disc in is vertebrae at C1. (Tr. 40-42)

With regard to mental impairments, Plaintiff testified that Klonopin helped with his shaking and tremors. He could not afford another medication his physician recommended. Plaintiff's OCD caused him to straighten and neaten everything in his home. No one could cook properly for him. During a typical day, Plaintiff did not get out of his house other than the trailer court. He became irritated and angry if he left his comfort zone. His daughter brought him groceries. He could attend doctor's appointments alone when able. Plaintiff also visited with his parents and friends. When his friends visited, they watched TV. Plaintiff was not involved in any regular activities. He sometimes said hello to neighbors in the trailer park. Plaintiff stated that he did not always have issues being around people. Plaintiff's condition worsened over the past five years. He could no longer attend church because he freaked out. Other than doctors' offices, Plaintiff occasionally went to his parents' house or a convenience store. Plaintiff enjoyed cooking, and he stated he would throw things together and make cowboy dinner and tacos. He also cooked frozen food in the microwave. (Tr. 42-47)

Plaintiff's attorney also questioned Plaintiff about his impairments. Plaintiff testified that he had problems performing his lawn care job because he was twitching, shaking, and experiencing asthma symptoms. He frequently missed work due to anxiety. He was unable to operate the trimmer because his hands would twitch and shake. Plaintiff stated that sometimes the shaking was so bad his daughters had to feed him, other times he was able to pick up the food with a fork. Plaintiff continued to have these symptoms even with medication. The tremors were worse when Plaintiff attended family functions, which he no longer did. Plaintiff also had tremors when home alone. Plaintiff could not write or hit numbers or letters on his cell phone. His OCD caused him to be irritable and always fix things. He felt better after he fixed the problems. Plaintiff also obsessed about someone coming to the door. (Tr. 47-51)

Plaintiff testified that aside from cooking, he enjoyed watching movies. However, he was unable to watch a movie from start to finish because he had racing thoughts that caused him to lose track. Plaintiff also had difficulty sleeping because of the racing thoughts. Ambien did not help. When he was around unfamiliar people, Plaintiff had severe anxiety panic attacks. Plaintiff stated that he would freak out and become irritable and angry. He felt he could hurt someone if he did not get out of the situation. Plaintiff was unable to get along with authority figures. His anxiety and shaking would worsen. (Tr. 51-53)

In addition, Plaintiff had problems with asthma every day. The weather aggravated Plaintiff's breathing problems. He used a nebulizer and inhaler. With regard to migraines, Plaintiff stated that they symptoms could last all day or only 20 minutes. On an average day, the migraine symptoms would come and go. With regard to medications, he only had issues with Klonopin. Plaintiff testified that he attempted to clean his trailer. He was able to sweep, do dishes, and do his own laundry. (Tr. 53-54)

A vocational expert ("VE") also testified at the hearing. The ALJ asked the VE to assume a person who could perform a range of light work, including lifting up to 20 pounds occasionally and lifting/carrying 10 pounds frequently; standing or walking for 6 hours; sitting for up to 6 hours in an 8-hour day with normal breaks; and avoiding exposure to extreme cold and heat, wetness and humidity, and pulmonary irritants. In addition, the individual was able to understand, carry out, and remember only simple, routine, repetitive tasks involving only simple work-related decisions with few workplace changes and no interaction with the public. While this hypothetical question precluded Plaintiff's past work, the VE testified that the person could work as an electrical accessory assembler, a power screwdriver operator, and a production assembler. If the individual's OCD caused him to be only 85% as productive as an employer

expected due to being off task and organizing the workspace, the jobs would be eliminated. In addition, if panic caused the person to be absent from work one or more times a month, the jobs would be unavailable. (Tr. 55-57)

Plaintiff's attorney asked the VE to consider the first hypothetical with the further limitation of no contact with co-workers or supervisors in the workplace. In that event, the VE testified that the individual could not perform any work. If the person had trouble dealing with co-workers and supervisors and had a disruptive incident once a month on a routine basis, the individual would not be able to continue employment. Finally, if the person had tremors one to two hours a day, which made it impossible to manipulate objects with his hands in the workplace, the person would be unable to perform unskilled work. (Tr. 57-59)

In a Function Report – Adult dated December 30, 2012, Plaintiff stated that he spent the day sitting and watching TV. He took care of his daughter and his dog. Plaintiff had problems sleeping but no problems with personal care. Plaintiff was able to cook, wash dishes, sleep, mow the lawn, and do laundry. He only went outside when needed because he was scared and shook at the prospect of going out. Plaintiff shopped for food when needed. He drove around, hung out at his house, and visited his parents. Plaintiff stated that his impairments affected his ability to talk, remember, complete tasks, concentrate, understand, use his hands, and get along with others. He could not pay attention for very long or finish what he started. He followed spoken instructions better than written instructions, but could follow written instructions well. He got along with authority figures. Plaintiff could not handle stress but could handle changes in routine pretty well. (Tr. 232-39)

## III. Medical Evidence

Plaintiff submitted medical records from 1995 to 2003 indicating that he received treatment for migraine headaches, depression, neck pain, bipolar disorder, personality disorder, adjustment disorder, panic disorder, degenerative disc disease, C-spine radiculopathy, TMJ, asthma, tobacco dependence, allergic rhinitis, periodic limb movement disorder, and history of chemical dependence and alcohol abuse. (Tr. 350-488)

On April 6, 2012, Plaintiff presented to the emergency room with complaints of an itchy rash on his right arm. He was diagnosed with contact dermatitis and prescribed Zantac and hydroxyzine hydrochloride. Plaintiff returned to the ER on May 19, 2012 with another rash. He was diagnosed with poison ivy and prescribed prednisone and Zyrtec. (Tr. 284-95)

Plaintiff saw Dennis Long, RN, FNP, BC on June 1, 2012 for complaints of wheezing, congestion, coughing, asthma, and no energy. Nurse Long assessed asthma and sinusitis. He prescribed Zithromax, a Medrol dose pack, and a Pro Air inhaler. (Tr. 301)

On November 5, 2012, Plaintiff saw Judy Johnson, LCSW for counseling. Plaintiff was visibly trembling with anxiety. He reported escalating fears, suicidal thoughts, racing thoughts, poor concentration, and mild OCD symptoms. Plaintiff stated his symptoms progressed over the past two years. Ms. Johnson noted that Plaintiff's anxiety and depression paralyzed him at times. While difficult to diagnose Plaintiff, Ms. Johnson assessed anxiety, panic disorder with agoraphobia, major depression, and possible bipolar disorder. Ms. Johnson made an appointment for Plaintiff to see Daniela Kantcheva, APRN, BC, APMHNP, a psychiatric nurse practitioner. (Tr. 308-09)

Nurse Kantcheva assessed Plaintiff on November 9, 2012. Plaintiff's chief complaint was that he felt like he was losing his mind, freaking out about nothing, and unable to sleep.

Mental status exam revealed good eye contact with no suicidal or homicidal thoughts or hallucinations. Plaintiff's thought process was logical and goal directed, and his insight and judgment were fair. He was alert and oriented. His intelligence appeared average. Nurse Kantcheva diagnosed panic disorder with agoraphobia; problems with social environment, severe; occupational problems, severe; economic problems, severe; and a GAF of 55. She prescribed Vistaril for anxiety and advised Plaintiff to return in two weeks. (Tr. 306-07)

Plaintiff returned to Nurse Kantcheva on November 27, 2012. He was visibly shaking with mild bilateral hand tremors. Plaintiff reported feeling very anxious and stressed. He didn't leave the house because public places made him anxious. He lost his job. Mental status exam revealed anxious affect and mood; no suicidal or homicidal ideation; no overt psychosis; normal speech; and oriented to time, place, and person. Nurse Kantcheva assessed panic disorder with agoraphobia, continued Vistaril, and added Tegretol. (Tr. 304) On December 11, 2012, Plaintiff reported no problems with Tegretol and stated that it helped with the shakiness. Nurse Kantcheva noted no hand tremors. He complained of anxiety and poor sleep. His mental status exam remained unchanged. Nurse Kantcheva assessed panic disorder with agoraphobia, increased the dosage in Plaintiff's prescriptions, and added Elavil. (Tr. 302) On January 9, 2013, Plaintiff complained that his medication was not working. Nurse Kantcheva discontinued Elavil and Tegretol and added Celexa, Trazodone, and Inderol. (Tr. 349)

Plaintiff saw Kishmore Khot, M.D., on February 12, 2013 for a psychiatric evaluation. Dr. Khot assessed panic disorder with agoraphobia, bipolar II disorder, migraines, hypertension, asthma, and a GAF of 53. Dr. Khot prescribed LICO3 for mood stability and racing thoughts, as well as Klonopin for anxiety. He advised Plaintiff to continue counseling. (Tr. 348)

Plaintiff presented to the ER on February 16, 2013 for complaints of an asthma attack, shortness of breath, and wheezing. Plaintiff appeared comfortable and was alert and oriented x3. He had normal affect and normal concentration. A chest x-ray was normal. Diagnosis was RAD/COPD exacerbation. (Tr. 326-32)

Plaintiff returned to Dr. Khot on March 19, 2013. Plaintiff reported doing better on a combination of Lithium and Klonopin. He had less anxiety and less racing thoughts. On mental status examination, Plaintiff's affect and mood were cheerful, with no overt psychosis and no suicidal or homicidal ideation. His speech was normal, and his insight and judgment were fair. Dr. Khot diagnosed panic disorder with agoraphobia and bipolar II disorder. Dr. Khot increased Plaintiff's medication dosages and advised Plaintiff to continue counseling to learn coping skills. (Tr. 346)

Plaintiff experienced another asthma attack on April 3, 2013 and presented to the ER for an evaluation. Psychiatric exam revealed normal affect, normal insight, and normal concentration. He was oriented x3. Plaintiff was diagnosed with asthma, anxiety, and COPD. (Tr. 314-22)

On June 26, 2013, Plaintiff saw Dr. Khot and reported doing better, with some anxiety and hand tremors. However, the combination of his prescription medications lessened his anxiety and racing thoughts. Plaintiff's mental status examination revealed cheerful affect and mood, with no overt psychosis and no suicidal or homicidal ideation. His speech was normal, and his insight and judgment were fair. Dr. Khot diagnosed panic disorder with agoraphobia and bipolar II disorder. (Tr. 341)

On September 25, 2013, Plaintiff complained of hand tremors. Dr. Khot added Paxil. (Tr. 340) On November 27, 2013, Plaintiff complained of OCD symptoms and reported that

Paxil did not help. He had obsessive thoughts about doing and arranging things in a certain way. The symptoms had increased in frequency and duration. Dr. Khot noted that Plaintiff's mood and affect were anxious, with no overt psychosis. He denied command hallucinations or suicidal/homicidal ideation. His speech was normal, with insight and judgment age appropriate. Dr. Khot assessed panic disorder with agoraphobia and OCD. He discontinued Paxil and added Fluvoxamine. (Tr. 339) On January 29, 2014, Plaintiff again complained of OCD symptoms. His mental status exam was unchanged. Dr. Khot discontinued Luvox and added a trial of Clomipramine for OCD. (Tr. 338)

Dr. Khot completed a Medical Source Statement – Mental ("MSS") on February 6, 2014. Dr. Khot opined that Plaintiff was extremely limited in his ability to understand and remember detailed instructions; carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; complete a normal workday and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. In addition, for marked limitations, Dr. Khot checked the boxes for ability to understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. 334-35)

9

On January 29, 2013, James W. Morgan, PhD, issued a consultative opinion regarding Plaintiff's anxiety disorders. Dr. Morgan opined that Plaintiff's mental impairment did not meet the "B" or "C" criteria of the listings. He found Plaintiff to be partially credible. Based on the medical evidence and Plaintiff's allegations, Dr. Morgan opined that Plaintiff was moderately limited in his ability to work in coordination with or in proximity to others without being distracted by them and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. He found Plaintiff not significantly limited in other areas of sustained concentration and persistence. In addition, Plaintiff was moderately limited in his ability to interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisor. Plaintiff was not significantly limited in other areas of social interaction. In the narrative discussion, Dr. Morgan opined that, based on the evidence, Plaintiff had the capacity to complete and sustain the performance of simple repetitive tasks away from the public. (Tr. 63-78)

### IV. The ALJ's Determination

In a decision dated April 1, 2014, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through March 30, 2015. He had not engaged in substantial gainful activity since November 21, 2012, his alleged onset date. The ALJ found Plaintiff had the severe impairments of panic disorder with agoraphobia; major depressive disorder; obsessive compulsive disorder ("OCD"); and asthma. However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-21)

After carefully considering the record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work. Specifically, Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for up to 6 hours in an 8-hour workday; and sit for approximately 6 hours in an 8-hour workday with normal breaks. Plaintiff needed to avoid exposure to extreme cold, heat, wetness, humidity, and pulmonary irritants. He could understand, carry out, and remember simple, routine, repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes. In addition, Plaintiff should have no interaction with the public. The ALJ found Plaintiff was unable to perform his past relevant work. However, in light of his younger age on the alleged onset date, high school education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy which Plaintiff could perform. Such jobs included electrical accessory assembler, power screwdriver operator, and production assembler. Therefore, the ALJ concluded that Plaintiff had not been under a disability from November 21, 2012 through the date of the decision. (Tr. 21-27)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. The Social Security Act defines disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe physical or

11

mental impairment or combination of impairments which meets the duration requirement; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. *Id.*

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal quotations omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment. *Johnson v. Chater*, 108 F.3d 942, 944 (8th Cir. 1997) (citations and internal quotations omitted).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. *Id.*

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the *Polaski*[2] factors and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. *Marciniak*, 49 F.3d at 1354.

## VI. Discussion

Plaintiff argues that substantial evidence does not support the ALJ's RFC because the ALJ failed to provide sufficient reasons for giving no weight to the opinion of Dr. Khot, and the opinion is devoid of medical evidence supporting the RFC. In addition, Plaintiff contends that the ALJ erroneously relied on the opinion of the state agency non-examining physician. Defendant maintains that the ALJ's determination is supported by substantial evidence.

---

[2] The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" *Buckner*, 646 F.3d at 558 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

With regard to Plaintiff's residual functional capacity, "a disability claimant has the burden to establish [his] RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citation omitted). The ALJ determines a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [his] limitations.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). RFC is defined as the most that a claimant can still do in a work setting despite that claimant's limitations. 20 C.F.R. § 404.1545(a)(1).

The record shows that the ALJ properly considered all of the medical evidence and properly discounted the opinion of Dr. Khot. The Court notes that "[a] treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight . . . provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted); *see also* SSR 96-2P, 1996 WL 374188 (July 2, 1996) ("Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."). The ALJ need not give controlling weight to a treating physician's opinion where the physician's treatment notes were inconsistent with the physician's RFC assessment. *Goetz v. Barnhart*, 182 F. App'x 625, 626 (8th Cir. 2006). Further, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." *Swarnes v. Astrue*, Civ. No. 08-5025-KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th

Cir. 2010) (finding that the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration).

Here, Dr. Khot listed marked and extreme limitations in the MSS. (Tr. 334-35) However, the ALJ correctly found that Dr. Khot's opinion was inconsistent with the minimal clinical signs and findings in Plaintiff's medical records and treatment notes, as well as Plaintiff's daily activities. (Tr. 24-25) While some of Plaintiff's mental status exams indicated an anxious affect and mood, the record also shows that during many of Plaintiff's mental status exams he had normal speech and fair insight/judgment. (Tr. 287, 293, 307, 318, 327, 341, 346) Dr. Khot described Plaintiff's mood and affect as "cheerful." (Tr. 341, 346) None of the medical records indicated the marked and extreme impairments set forth in Dr. Khot's opinion. Further, the ALJ correctly noted that such extreme limitations would have likely required more aggressive treatment or inpatient psychiatric care. *See Mitchell v. Colvin*, No. , 2014 WL 65386, at *27 (E.D. Mo. Jan. 8, 2014) (finding the ALJ properly gave the treating physician's opinion less than controlling weight where extreme behavior would have likely resulted in more frequent psychiatric hospitalizations and would not have yielded normal mental status examination results). As stated above, the ALJ need not give controlling weight to a treating physician's opinion where the physician's treatment notes were inconsistent with the physician's RFC assessment. *Goetz*, 182 F. App'x at 626. Additionally, the ALJ may properly give little weight to an opinion that consists of vague, conclusory statements or is merely a checklist with no elaboration. *Swarnes*, 2009 WL 454930, at *11; *Wildman*, 596 F.3d at 964. As the MSS completed by Dr. Khot contained limitations far more severe than indicated in the treatment record, merely consisted of checked boxes, and failed to include any medical evidence or explanation, the ALJ properly gave the opinion no weight.

In addition, Plaintiff's daily activities were inconsistent with the extreme limitations set forth in Dr. Khot's opinion. Plaintiff argues that the ALJ relied on a selective understanding of Plaintiff's activities and that the evidence showed restrictions in Plaintiff's activities of daily living. The record shows that Plaintiff reported taking care of his daughter and dog, preparing meals, washing dishes, mowing the lawn, doing laundry, shopping, driving around, and socializing with friends and family. (Tr. 23, 232-37) These activities involve more than physical exertion. As found by the Eighth Circuit, an ability to engage in a number of daily activities detracts from Plaintiff's credibility that he is disabled due to mental impairments. *See Roberson v. Astrue*, 481 F.3d 1020, 1023, 1025 (8th Cir. 2007) (affirming the ALJ's credibility analysis where the plaintiff diagnosed with bipolar syndrome took care of her child, drove, fixed simple meals, performed housework, shopped, and handled money). The Court therefore finds that the ALJ properly evaluated Dr. Khot's opinion in light of the entire record as a whole and provided good reasons for giving the opinion little weight. *See Rosa v. Astrue*, 708 F. Supp. 2d 941, 954 (E.D. Mo. 2010) (finding the decision not to give controlling weight to treating physician was supported by substantial evidence on the record as a whole where the ALJ identified good reasons for discrediting the opinion).

Plaintiff also argues that the ALJ erred in assigning significant weight to the opinion of the state agency consultant Dr. Morgan. Plaintiff asserts that the opinion predated Dr. Khot's treatment and medical opinion; thus the opinion was based on an incomplete record and may not constitute substantial evidence. "As a general matter, 'the report of a consulting physician . . . does not constitute substantial evidence upon the record as a whole . . . .'" *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000) (quoting *Lanning v. Heckler*, 777 F.2d 1316, 1318 (8th Cir. 1985) (internal quotation and citation omitted)). However, "the Eight Circuit has recognized that

a consulting physician may be accorded greater weight in two circumstances: "(1) where it is supported by better or more thorough medical evidence, or (2) where the treating physician's opinion has been properly discredited." *Durfee v. Colvin*, No. 4:13CV385 CDP, 2014 WL 1057216, at *8 (E.D. Mo. Mar. 14, 2014) (citing *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (internal quotations and citations omitted)).

As discussed above, the ALJ properly discredited the opinion of Dr. Khot because it was not supported by objective medical evidence or by Plaintiff's daily activities. Further, Dr. Morgan assessed the totality of the medical evidence prior to Dr. Khot's treatment. The ALJ then discussed in detail all of the medical evidence, including Dr. Khot's opinion and medical treatment records. Contrary to Plaintiff's argument that the ALJ failed to properly assess the opinion evidence in the record in determining Plaintiff's RFC, the Court finds that the ALJ's RFC assessment is supported by medical evidence contained in the record as a whole. The ALJ need not rely entirely on a particular doctor's opinion or choose between opinions. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Here, the ALJ properly performed an exhaustive analysis of the medical records and noted the inconsistencies in the record between the treating source's opinions and other substantial evidence. *Id.* at 926. Further, the ALJ properly assessed and discredited Plaintiff's allegations of disability.

Plaintiff argues, however, that the ALJ failed to include sufficient limitations in the RFC or explain his reasons for omitting certain limitations. Specifically, Plaintiff asserts that the ALJ failed to include moderate limitations in Plaintiff's ability to work in coordination with others; ability to complete a normal work day or work week without interruptions from psychologically based symptoms; and ability to accept instructions and respond appropriately to criticism from supervisors. While Dr. Morgan did find moderate limitations in these areas, the form explains

that the actual mental RFC assessment is recorded in the narrative discussion. (Tr. 77) Dr. Morgan explained in the narrative discussion that, based on the evidence, Plaintiff had the capacity to complete and sustain the performance of simple repetitive tasks away from the public. (Tr. 76) The ALJ included this limitation in the RFC by finding Plaintiff could understand, carry out, and remember simple, routine, repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes. In addition, Plaintiff should have no interaction with the public. (Tr. 21) Therefore, the Court finds that substantial evidence supports the ALJ's RFC determination and the determination that Plaintiff is not disabled. *See McCain v. Colvin*, __ Fed. App'x __, 2017 WL 464521, at *1 (8th Cir. Feb. 3, 2017) (upholding the ALJ's RFC determination where it was supported by some medical evidence such as assessments of a consulting physician and the RFC findings of reviewing physicians). Thus, Court affirms the final decision of the Commissioner.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits is **AFFIRMED**. A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 29th day of March, 2017.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**